**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DR. KARIN PAGEL MEINERS, PH.D.      )
                                     )
                Plaintiff,           )
                                     )
vs.                                       )      Case No. 04-2266-KHV
                                     )
UNIVERSITY OF KANSAS, and        )
DR. WILLIAM KEEL, PH.D in his      )
Individual capacity,               )
                                     )
                Defendants.         )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT KEEL'S MOTION TO DISMISS**

The individual defendant, Dr. William Keel, has filed a motion to dismiss Count III of the complaint, contending that he is entitled to qualified immunity because the plaintiff, Dr. Karin Pagel Meiners, has failed to state a viable claim for deprivation of her liberty interest without due process in violation of the Fourteenth Amendment. For the reasons discussed below, defendant Keel's motion must be denied.

**STATEMENT OF FACTS**

Because defendant Keel has raised his qualified immunity defense in the context of a motion to dismiss, the court must accept all of the plaintiff's factual allegations as true, and draw all reasonable inferences from those allegations. Prager v. LaFaver, 180 F.3d 1185, 1189 (10th Cir. 1999); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 515 (10th Cir. 1998). The factual statement set forth in defendant Keel's memorandum (pp. 1-2) is incomplete because it fails to include the following factual allegations and reasonable inferences.

1.      On or about July 20, 2001, plaintiff filed a lawsuit styled <u>Dr. Karin Pagel</u> <u>Meiners, Ph.D. v. University of Kansas, et al.,</u> Case No. 02-3376 in the United States District Court of Kansas.  In this lawsuit, the plaintiff asserted in part that she had been discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  The plaintiff further asserted that defendant Keel had participated in the discriminatory and retaliatory acts against her.  Defendant Keel was deposed during the lawsuit.  (Complaint at ¶ 11)

2.      Summary judgment in favor of the defendants was granted in Case No. 02-3376 on September 16, 2002.  The plaintiff appealed the summary judgment ruling in favor of the defendants to the Tenth Circuit Court of Appeals.  The appeal was pending until February 24, 2004.   See <u>Meiners v. University of Kansas</u>, 359 F.3d 1222 (2004). (Complaint at ¶¶ 12-13)

3.      In Case No. 02-3376, the plaintiff contended in part that the defendants had deprived her of a property interest in continued employment with the University of Kansas without due process of law.  The plaintiff's asserted that she had a property interest in continued employment with the University because she was legally entitled to tenure under her appointment contract.  The plaintiff sought an injunction ordering her reinstatement as a tenured faculty member of the University.  <u>Meiners</u>, 359 F.3d at 1232-1233.

4.      Because the plaintiff was seeking reinstatement as a tenured faculty member of the University in Case No. 02-3376, the termination proceedings involving the plaintiff's employment with the University continued until February 24, 2004, when the Tenth Circuit issued its opinion.  (Complaint at ¶ 13)

## ARGUMENTS AND AUTHORITIES

Analysis of a claim of qualified immunity involves a two-step framework.  First, the court must determine whether the plaintiff has sufficiently alleged that the defendant violated a constitutional right.  Second, the court must determine whether the right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right.  <u>Tonkovich</u>, 159 F.3d at 516.

### I.  VIOLATION OF THE PLAINTIFF'S LIBERTY INTEREST

In order to sufficiently allege a deprivation of her liberty interest in her good name and reputation without due process, the plaintiff must allege four elements:

> (1) the defendant made a statement impugning his or her good name, reputation, honor, or integrity; (2) the statement was false; <u>(3) the defendant made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities</u>; and (4) the statement was published.

<u>Tonkovich</u>, 159 F.3d at 526.  Emphasis added.  See also <u>Stidham v. Peace Officers Standards And Training</u>, 265 F.3d 1144, 1153 (10th Cir. 2001);  <u>Garcia v. City of Albuquerque</u>, 232 F.3d 760, 772 (10th Cir. 2000); <u>Workman v.  Jordan</u>, 32 F.3d 475, 481 (10th Cir. 1994); <u>Melton v. City of Oklahoma City</u>, 928 F.2d 920, 925-27 (10th Cir. 1991); <u>Sullivan v. Stark</u>, 808 F.2d 737, 739 (10th Cir. 1987).

Here, defendant Keel contends that the plaintiff has failed to sufficiently allege the third element because "Supreme Court and Tenth Circuit precedent clearly establishes that damage to an individual's reputation which may interfere with possible future employment opportunities does not state a claim under § 1983." (Def. memo. at p. 5.)  This contention must be rejected because it fails to draw all reasonable inferences from the plaintiff's

allegations, and because it further misinterprets Supreme Court and Tenth Circuit precedent.

In regard to the third element of her liberty interest claim, the plaintiff must sufficiently allege either that "the defendant made the [stigmatizing] statement in the course of termination proceedings," or that "the statement foreclosed future employment opportunities." Tonkovich, 159 F.3d at 526.  The plaintiff has adequately alleged both of these alternatives.

### A.  Defendant Keel's Stigmatizing Statement Was Made In The Course Of Termination Proceedings

Defendant Keel made his stigmatizing statement on January 29, 2003, when he told Professor Brodsky that the plaintiff "lied to us continuously, lied to the University Tenure Committee about her research, and based her dossier on false information."  (Complaint at ¶ 15)  This stigmatizing statement was made "in the course of termination proceedings," since the termination proceedings involving the plaintiff's employment with the University continued until February 24, 2004.  (Statement of Facts above at nos. 1-4)

The plaintiff's "termination proceedings" included Case No. 02-3376 because she asserted in that litigation that she had a property interest in continued employment with the University, based upon a legal entitlement to tenure under her appointment contract.  The plaintiff also sought an injunction ordering her reinstatement as a tenured faculty member of the University.   Meiners, 359 F.3d at 1232-1233.   Since the plaintiff contested her termination from employment with the University in Case No. 02-3376, and further sought reinstatement to her employment, the plaintiff's "termination proceedings" continued until February 24, 2004, when the Tenth Circuit issued its opinion.  (Complaint at ¶ 13)

4

The above conclusion is supported by the Tenth Circuit's opinion in <u>Tonkovich</u>, which involved the termination of a tenured faculty member employed by the University of Kansas.  Professor Tonkovich was terminated from his employment after a protracted due process hearing involving allegations that he had raped a law student.   Professor Tonkovich sued the University as well as a number of its administrators and faculty members on a variety of legal theories, including violation of his liberty interest.  One of Professor Tonkovich's liberty interest claims was asserted against two faculty members for allegedly stating that they  heard that a law student had accused Professor Tonkovich of rape.  The Tenth Circuit concluded that such a liberty interest claim would be viable, except for the fact that Professor Tonkovich had been afforded an adequate name-clearing hearing.  The court explained:

> We acknowledge that Professor Tonkovich did, indeed, have a liberty interest in his reputation, deserving of due process protection.   However, even if the University infringed that interest, <u>when, for example, two of the faculty members stated that they heard that the Law Student accused Professor Tonkovich of rape</u>, we conclude that the University provided him with an adequate name-clearing hearing.  Thus, there is perhaps a tort claim, but there is no constitutional violation.

159 F.3d at 526.  Emphasis added.

As in <u>Tonkovich</u>, the plaintiff here has alleged a stigmatizing statement made by defendant Keel after she had been terminated from employment, but during the period in which she was contesting her termination and seeking reinstatement.   Accordingly, the plaintiff has sufficiently alleged a stigmatizing statement made "in the course of termination proceedings."

## B.  Defendant Keel's Stigmatizing Statement
## Foreclosed Future Employment Opportunities

Defendant Keel's stigmatizing statement about the plaintiff also "foreclosed future employment opportunities" because it involved a false charge of sufficient opprobrium - - that she lied to the University  - - which would make the plaintiff an unlikely candidate for employment by a future employer in the academic world.  This element of a liberty interest claim was  comprehensively analyzed in  Melton v. City of Oklahoma City, 928 F.2d 920 (10th Cir. 1991).

In Melton, the Tenth Circuit reviewed the Supreme  Court's decisions in Board of Regents v. Roth, 408 U.S. 564 (1972);  Paul v. Davis, 424 U.S. 693 (1976);  Bishop v. Wood, 426 U.S. 341 (1976); and Codd v. Velger, 429 U.S. 624 (1977).  The Tenth Circuit summarized the Supreme Court's decisions as follows:

> When a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created.

928 F.2d at 927.  Emphasis added.  In a footnote, the Tenth Circuit went on to explain:

> The employee does not have to prove actual denial of a job opportunity.  It is sufficient that a plaintiff prove termination based upon a publicized false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment by a future employer.

928 F.2d at 940, n. 11.  Emphasis in original.

Despite the Tenth Circuit's recognition in Melton of a viable liberty interest claim based on a stigmatizing statement which "foreclose[d] the employee's freedom to take

6

advantage of future employment opportunities," defendant Keel argues that "Supreme Court and Tenth Circuit precedent clearly establishes that damage to an individual's reputation which may interfere with possible future employment opportunities does not state a claim under § 1983."  (Def. memo. at p. 5.)  This argument must fail because it is based on an incorrect interpretation of the Supreme Court's decisions in Paul v. Davis, 424 U.S. 693 (1976), and Siegert v. Gilley, 500 U.S. 226 (1991).

The proper interpretation of the Supreme Court's decisions in Paul and Siegert was explained by the Tenth Circuit in  Stidham v. Peace Officer Standards and Training, 265 F.3d 1144 (10th Cir. 2001).  The Tenth Circuit in Stidham first pointed out that in Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994), the court had adopted a four-part test for analyzing a liberty interest claim.  The third element of this test was that the stigmatizing statement "must occur in the course of terminating the employee or must foreclose other employment opportunities."  265 F.3d at 1153.  Emphasis in original.   The Stidham court next observed:

> The 'foreclosure of employment opportunities' aspect of the Workman test, upon which Appellant principally relies for his liberty interest claim, was based in large part upon the Supreme Court's decision in Paul v. Davis, [citation omitted].

265 F.3d at 1153.

The Stidham court then went on to analyze in detail the Supreme Court's decisions in Paul and Siegert.  265 F.3d at 1153-1154.  Based on this analysis, the Stidham court concluded:

> The Court in *Siegert* did not expressly overrule its prior precedents; however, despite its lack of explanation, the Court's holding in *Siegert* compels us to conclude that even though this action would have survived under *Paul* and its

progeny, it has foreclosed relief under the Liberty Interest Clause of the Constitution on the facts alleged in this case.

Like Siegert, Appellant was not terminated incident to an alleged defamation; Appellant resigned, then sought government employment elsewhere. Like Siegert, Appellant was unable to obtain the type of government employment he sought, allegedly due to the defamatory statements. On facts so close that they cannot be distinguished on a principled basis, the Supreme Court has foreclosed finding that this set of facts deprive one of a protected liberty interest. Thus, we hold that Appellant has not adequately alleged a claim for the violation of a constitutionally-protected liberty interest.

265 F.3d at 1154. Emphasis added.

In contrast to the employees in Siegert and Stidham, the plaintiff here did not resign from her employment, but rather was involuntarily terminated. Moreover, she contested her termination by filing and pursuing Case No. 02-3376, in which she sought reinstatement to her employment with the University of Kansas. In the course of the litigation in Case No. 02-3376, defendant Keel made a stigmatizing statement about the plaintiff to a possible future employer.

The stigmatizing statement made by defendant Keel was "incident to" the plaintiff's termination, in the sense that the statement was made during the course of the litigation in Case. No. 02-3376, and in explanation of why the plaintiff was terminated from her employment with the University of Kansas. In light of the particular facts alleged here, the plaintiff has stated a viable liberty interest claim based on a stigmatizing statement which "foreclosed future employment opportunities."

## II. <u>CLEARLY ESTABLISHED LAW</u>

Because the plaintiff has sufficiently alleged that defendant Keel violated her liberty interest, the court must next decide whether a reasonable person in defendant Keel's position would have known that his conduct violated her liberty interest.  Based on the Tenth Circuit cases cited above, this court must conclude that a reasonable person in defendant Keel's position would have known that his stigmatizing statement about the plaintiff, which was made "in the course of termination proceedings," and/or which "foreclosed future employment opportunities," violated the plaintiff's rights under the Fourteenth Amendment.

## <u>CONCLUSION</u>

For the reasons discussed above, the court must deny defendant Keel's motion to dismiss, and rule that he is not entitled to qualified immunity.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN,
 MCENTIRE & JARBOE, L.L.C.
1000 Bank of America Tower
534 S. Kansas Avenue
Topeka, KS  66603
Phone: (785) 357-6311
Fax: (785) 357-0152


s/ Alan V. Johnson
Alan V. Johnson, KS #9992
Stephen D. Lanterman, KS #18844
ajohnson@sloanlawfirm.com
slanterm@sloanlawfirm.com
 **Attorneys for Plaintiff,**
  **Karin Pagel-Meiners**

## CERTIFICATE OF SERVICE

I herby certify that on the  10th day of December, 2004, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following parties:

Sara Trower
Associate General Counsel and
Special Assistant Attorney General
UNIVERSITY OF KANSAS
245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, Kansas 66045-7535
ATTORNEY FOR DEFENDANTS


I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/EFC participants: NONE

s/ Alan V. Johnson
Alan V. Johnson, KS #9992
Stephen D. Lanterman, KS #18844
SLOAN, EISENBARTH, GLASSMAN,
MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave, Suite 1000
Topeka, Kansas 66603
Telephone     (785) 357-6311
Fax               (785) 357-0152
ajohnson@sloanlawfirm.com
slanterm@sloanlawfirm.com